UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 15-81275-CIV-MARRA

SARAH DYKSTRA,

    Plaintiff,

vs.

FLORIDA FORECLOSURE ATTORNEYS,
PLLC, and RICK FELBERBAUM,

    Defendants.
_____/

## **OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (DE 12). The motion is ripe for review. For the following reasons, the motion is denied.

### **I. Background**

Plaintiff Sarah Dykstra was employed as the Information Technology Director for Defendants Florida Foreclosure Attorneys, PLLC and Rick Felberbaum. (DE 1 ¶ 4.) Due to a back injury, Dykstra took leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq*. (2012). (DE 1 ¶¶ 14–16.)

Approximately one month before the expiration of her FMLA leave, Dykstra told Defendants that she wanted to return to work and was able to do so. (DE 1 ¶ 18.) Dykstra provided Defendants with a fitness-for-duty certification stating that she was medically cleared to return to work with light duty restrictions. (DE 1 ¶ 18.) Defendants refused to allow Dykstra to return to work until she was "100% cured." (DE 1 ¶ 18.)

1

A few days before Dykstra's FMLA leave expired, Defendants informed Dykstra that she could not return to work unless she provided a medical certification confirming that she was medically cleared to return to work without any restrictions. (DE 1 ¶ 19.) On the day Dykstra's leave expired, Defendants informed Dykstra that her employment would be terminated if she could not return to work in two days "100% cured." (DE 1 ¶ 20.) Defendants then terminated Dykstra. (DE 1 ¶¶ 13, 22–23.)[1] Dykstra alleges that she "was able to perform the essential functions of the IT Director position with light duty restrictions." (DE 1 ¶ 21.)

Dykstra sued Defendants asserting claims for FMLA interference, FMLA retaliation, disability discrimination under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112 (2012), and disability discrimination under the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 760.01–760.11, 509.092 (2015). Defendants moved to dismiss the complaint in its entirety for failure to state a claim.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests. The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise

---

[1] Dykstra alleges that her termination date was September 6, 2014. This is the date Defendants told Dykstra that her employment would be terminated if she could not return "100% cured" in two days. It thus appears that Dykstra's actual termination date would be two days later on September 8, 2014. The discrepancy is immaterial for the purpose of this motion.

a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. Discussion

**A. FMLA Claims**

Dykstra asserts an FMLA interference claim and an FMLA retaliation claim, which the Court considers together because Defendants assert the same basis for dismissing both claims. An interference claim is where "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001). A retaliation claim is where "an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id.* Defendants' only asserted basis for dismissing both claims is the alleged inadequacy of Dykstra's fitness-for-duty certification.

The FMLA grants eligible employees the right to leave in certain situations "and the right following leave 'to be restored by the employer to the position of employment held by the employee

3

when the leave commenced' or to an equivalent position." *Id.* (quoting 29 U.S.C. § 2614(a)(1)). An employee has no right to restoration, however, if after the FMLA-leave period the employee remains unable to perform an essential function of the position because of a physical or mental condition. *See* 29 C.F.R. § 825.216(c).[2] "Unable to perform the functions of the position" is defined as "the health care provider find[ing] that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position." *Id.* § 825.123(a).

One tool at an employer's disposal to discern whether an employee is able to perform the functions of the position, and thus whether the employee is entitled to restoration, is a fitness-for-duty certification. The FMLA allows an employer, as part of a uniformly applied practice or policy, to condition an employee's right to be restored to her position on the employee "receiv[ing] certification from the health care provider of the employee that the employee is able to resume work." 29 U.S.C. § 2614(a)(4). An employee who fails to provide a validly requested fitness-for-duty certification loses her right to reinstatement. 29 C.F.R. § 825.312(e).

The regulations concerning fitness-for-duty certifications contemplate two types of certifications. *See id*. § 825.312(b). The first type of fitness-for-duty certification that an employer may require is one where the healthcare provider certifies that the employee is "able to resume work." *Id.* The second type of fitness-for-duty certification that an employer may require is one that

---

[2] The regulation provides in pertinent part: "If the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to *another position* under the FMLA." 29 C.F.R. § 825.216(c) (emphasis added). Read literally, this regulation addresses only an employee's right to restoration to "another position" and says nothing about the right to restoration to the position previously had. Nevertheless, if an employee has no right to restoration to "another position" if unable to perform the essential requirements of her prior position, it is clear that the employee also has no right to be restored to her prior position. The Eleventh Circuit has so interpreted this regulation. *See Grace v. Adtran, Inc.*, 470 F. App'x 812, 815 (11th Cir. 2012) (per curiam).

4

"specifically address[es] the employee's ability to perform the essential functions of the employee's job." *Id.*[3]

In order to require either type of fitness-for-duty certification as a condition for restoration, the employer must advise the employee in its notice designating the employee's leave as FMLA-qualifying that it will require a fitness-for-duty certification for the employee to return to work. *Id.* § 825.312(d)–(e). The FMLA regulations are more demanding on an employer who seeks to require the second type of certification. To do so, "an employer must provide an employee with a list of the essential functions of the employee's job no later than" the time it gives notice of designating the employee's leave as FMLA-qualifying, and the designation notice itself must indicate "that the certification must address the employee's ability to perform those essential functions." *Id.* § 825.312(b). Regardless of which certification is required, an employer may request clarification of the certification from the healthcare provider. *Id.* "The employer may not delay the employee's return to work while contact with the health care provider is being made." *Id.*

Dykstra's complaint is silent as to whether Defendants followed the procedures for requesting either type of fitness-for-duty certification. While the complaint alleges that "Defendants failed to provide Plaintiff a written notice detailing specific expectations and obligations of Plaintiff," (DE 1 ¶ 31), Dykstra does not argue in response to Defendants' motion to dismiss that Defendants' request for a fitness-for-duty certification was invalid. In fact, she implicitly appears to concede that one was required. (DE 13 at 6) ("Accordingly, as alleged in the Complaint, in providing the Defendants with the above-referenced doctor's note, the Plaintiff *satisfied her requirements* under

---

[3] Notably, the regulation does not provide that either type of certification must state that the employee is "100% cured."

the FMLA . . . .") (emphasis added). Furthermore, Dykstra alleges that she provided such a certification when she was ready to return to work, which implies that she had prior notice of a requirement to do so. (DE 1 ¶ 18.) Based on the lack of a clear allegation in the complaint regarding the propriety of Defendants' request for a fitness-for-duty certification, and Dykstra's failure to argue that the request was invalid, the Court assumes that the request was valid for the purpose of this motion.

While the Court assumes that the request for *a* fitness-for-duty certification was valid, this assumption extends to only the first type of fitness-for-duty certification, which must state only that the employee is able to resume work. Nothing in the complaint suggests, and Defendants do not argue, that they satisfied the prerequisites for requesting the second type of fitness-for-duty certification, which requires the healthcare provider to specifically address the employee's ability to perform the essential functions of her job.[4] While not explicitly noting a distinction between different types of fitness-for-duty certifications, Dykstra indeed argues that she was only required to provide a fitness-for-duty certification that states she was able to return to work. (DE 13 at 6.)

Defendants argue that Dykstra fails to state an FMLA claim because her right to be restored to her position was conditioned upon her providing a satisfactory fitness-for-duty certification. Defendants contend that the "light duty restrictions" qualifier to Dykstra's fitness-for-duty certification rendered the certification inadequate and entitled them to refuse to restore Dykstra to her position and ultimately terminate her. The question before the Court is thus whether an employee who provides a fitness-for-duty certification that she is able to return to work "with light duty

---

[4] It is possible that the evidence on summary judgment or at trial may reveal otherwise. At this stage, however, the Court's analysis is limited to the allegations in the complaint.

6

restrictions" may state a cause of action under the FLMA when the lower threshold "able to resume work" certification is requested. The Court holds that the provision of such a fitness-for-duty certification does not foreclose an employee's FMLA claim.

The Court interprets the FMLA regulations regarding the submission of an "able to resume work" certification as less demanding than the regulations regarding the employer's option to a require an "ability to perform essential functions" certification. Hence, the Court concludes that an employee may be "able to resume work" even if she is unable to perform all the essential functions of her job. More particularly, as it pertains to this case, an employee may be able to resume work with restrictions, yet she may or may not be able to perform any one of the essential functions of the position, depending on the specific facts of the case. *See Carpo v. Wartburg Lutheran Home for the Aging*, No. 05 CV 1169 (JG), 2006 WL 2946315, at *3 (E.D.N.Y. Oct. 16, 2006) (Gleeson, J.) (holding that requirement for certification that employee has "ability to return to work" is not equivalent to requirement for certification that employee has ability to resume "full duties"). If the ability to resume work and the ability to perform all the essential functions of the job were synonymous, the regulations would not reference two standards and mandate heightened requirements before the employer could insist on a more demanding "ability to perform essential functions" certification.

Indeed, the two parts of the definition of "unable to perform the functions of the position" appear to mirror the standards for the two types of fitness-for-duty certifications. *See* 29 C.F.R. § 825.123(a). The first part of the definition, "the health care provider finds that the employee is unable to work at all," corresponds neatly to the fitness-for-duty certification that the employee is "able to resume work." Likewise, the second part of the definition, "the health care provider finds

7

that the employee . . . is unable to perform any one of the essential functions of the employee's position," corresponds to the fitness-for-duty certification that "specifically address[es] the employee's ability to perform the essential functions of the employee's job." It thus appears that each type of fitness-for-duty certification is meant to address the particular definition of "unable to perform the functions of the position" to which it corresponds.

Here, all that Dykstra was required to provide was a certification from her healthcare provider that she was able to resume work, i.e, that she was not "unable to work at all." *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1004 (6th Cir. 2005) ("[O]nce an employee submits a statement from her health care provider which indicates that she may return to work, the employer's duty to reinstate her has been triggered under the FMLA."). The certification that Dykstra could return to work with light duty restrictions satisfied this requirement. *See id.* at 1003–04 (holding fitness-for-duty certification was sufficient despite the fact that it stated the employee "should only work a 40–45 hour work week and limit her out of town travel to 1 day per week"); *Carpo*, 2006 WL 2946315, at *3 (holding fitness-for-duty certification sufficient despite the fact that it stated only that the employee "may attempt return to work" and explaining that "the regulation contemplates the presence of qualified, precatory, or broad language in a valid note, because it specifies a procedure for 'clarification' of such notes").[5] To hold otherwise would effectively convert a requirement for a certification that an employee is able to resume work into a requirement for a certification that the employee is able to perform all the essential functions of her job. Such an interpretation would

---

[5] *Brumbalough* and *Carpo* were decided under an earlier version of the FMLA regulations, which only contemplated "able to resume work" certifications. The addition of "ability to perform essential functions" certifications does not affect the validity of these cases as to the standard for an "able to resume work" certification. In fact, the addition of a second, more stringent certification requirement provides further support for these decisions as to the first, less demanding certification requirement.

render the difference between the two types of fitness-for-duty certifications, as well as the prerequisites for an employer to require an "ability to perform essential functions" certification, meaningless.

This does not mean that the FMLA requires an employer who fails to properly request an "ability to perform essential functions" certification (or any fitness-for-duty certification at all) to retain an employee who is unable to perform the functions of the position. Even if an employer fails to request an "ability to perform essential functions" certification, the employer may still require a medical examination of the employee to ensure that she is able to perform the essential functions of her position. *See* 29 C.F.R. § 825.312(h). And, without delaying the employee's reinstatement, an employer may contact the healthcare provider for further clarification of the fitness-for-duty certification. *Id.* § 825.312(b). The Court's decision here addresses only whether, based on the allegations in the complaint, Dykstra complied with her regulatory obligation to provide a satisfactory fitness-for-duty certification. This is a separate question from whether Dykstra was "unable to perform the functions of the position." *Brumbalough*, 427 F.3d at 1004 n.4; *Carpo*, 2006 WL 2946315, at *3 n.3 (both noting that questions of compliance with obligation to furnish a fitness-for-duty certification are separate from questions of whether employee is actually able to perform the functions of the position).

Even though the fitness-for-duty certification met Dykstra's regulatory obligations, the reference to "light duty restrictions" may ultimately provide an alternative basis for the loss of Dykstra's right to reinstatement. The Court notes that it is possible (though not obvious) that the essential functions of Dykstra's position as an IT Director are incompatible with "light duty restrictions." If this is the case, then the "light duty restrictions" qualifier would ultimately constitute

9

a finding by a healthcare provider that Dykstra could not perform the essential functions of her position. This would render Dykstra not entitled to reinstatement. If the "light duty restrictions" qualifier allowed Defendants to determine that Dykstra could not perform the essential functions of her position, they would not be required to reinstate Dykstra.[6] But the reason Dykstra would lose her right to restoration would be because she was unable to perform the essential functions of her position, *see* 29 C.F.R. § 825.216(c); not because she failed to provide a valid fitness-for-duty certification, *see id.* § 825.312(e). *See Brumbalough*, 427 F.3d at 1004 & n.4. The two bases for losing the right to restoration are based on two separate regulations.[7]

---

[6] Given that the "light duty restrictions" were not defined, this is unlikely. It is more likely that Defendants had an obligation to at least clarify what the light duty restrictions actually were before terminating Dykstra. *See Carpo*, 2006 WL 2946315, at *4–5.

[7] In *James v. Hyatt Regency Chicago*, the Seventh Circuit affirmed a grant of summary judgment to an employer where the employee's fitness-for-duty certification stated the employee could return to "light duty" work. 707 F.3d 775, 778, 781 (7th Cir. 2013). The Court rejects any suggestion that *James* supports dismissal in this case. First, the *James* court stated it agreed with the holding in *Brumbalough*. *Id.* at 780. Moreover, *James* was decided on summary judgment where there was a developed record supporting the conclusion that the employee was unable to perform the essential functions of his job. *See id.* at 780–81. Thus, this Court does not read *James* as holding that the submission of a fitness-for-duty certification that includes light duty restrictions is legally insufficient as a matter of law. Here, at the pleading stage, the Court does not have enough information to determine whether light duty restrictions render Dykstra unable to perform the essential functions of her job. The Court also notes that in *Budhun v. Reading Hospital & Medical Center*, the Third Circuit held that a fitness-for-duty certification that stated the employee could return to work with "no restrictions" was facially sufficient, and distinguished *James* based on the "light duty restrictions" qualifier in that case. 765 F.3d 245, 252–54 (3d Cir. 2014). This Court agrees with the holding in *Budhun*. In arriving at its decision, the *Budhun* court distinguished *James* by noting the health care professional there never stated that the employee could work without restrictions, suggesting that inclusion of restrictions on an employee's ability to return to work would not trigger an employer's duty to restore the employee to her former position. *Id.* Because *James* was decided on summary judgment with a record demonstrating the employee was not able to perform the essential functions of his position, this Court views the *Budhun* court's statement as dictum. The Court agrees with the approach of courts that distinguished between an evaluation of whether a fitness-for-duty certification is legally sufficient on its face and whether an employee is actually able to perform the functions of her position. *See Brumbalough*, 427 F.3d at 1004 n.4; *Carpo*, 2006 WL

It is also possible, however, that Dykstra could perform the essential functions of her position even with light duty restrictions. Light duty restrictions do not automatically mean that an employee cannot perform the essential functions of her job. Context is important. *Cf. id.* § 825.312(h) ("For example, an attorney could not be required to submit to a medical examination or inquiry just because her leg had been amputated. The essential functions of an attorney's job do not require use of both legs; therefore such an inquiry would not be job related. An employer may require a warehouse laborer, whose back impairment affects the ability to lift, to be examined by an orthopedist, but may not require this employee to submit to an HIV test where the test is not related to either the essential functions of his or her job or to his/her impairment.").

While a determination at summary judgment may prove different, the Court cannot now determine, based solely on the allegations in the complaint, that "light duty restrictions" are incompatible with the essential functions of Dykstra's position as an IT Director, or that the presence of this qualifier would allow Defendants to determine that Dykstra could not perform the essential functions of her position. "Determining what functions are 'essential' to a particular position is a question of fact." *Brumbalough*, 42 F.3d at 1005. While for some occupations it may be so obvious that "light duty restrictions" would prevent an employee from performing the essential functions of her position that dismissal may be appropriate, it is not clear that this is the case for an IT Director. And, in any event, here Dykstra alleges that she could still perform the essential functions of her position with light duty restrictions. (DE 1 ¶ 21.) On a motion to dismiss, the Court must accept the truth of that allegation.

---

2946315, at *3 n.3. Indeed, this distinction explains why a "light duty restrictions" qualifier in a case such as *James* may be dispositive on a motion for summary judgment but not on a motion to dismiss.

Based on the allegations in the complaint, Dykstra's fitness-for-duty certification was adequate despite its reference to "light duty restrictions." If Defendants still had concerns about Dykstra's ability to perform her job, they should have sought clarification from her healthcare provider or requested that Dykstra submit to a medical examination (or, to prevent such an issue in the first place, they could have requested the second type of fitness-for-duty certification). Furthermore, at this stage, the Court cannot determine that the "light duty restrictions" qualifier would have demonstrated to Defendants that Dykstra was unable to perform the essential functions of her position (which would have, independently of the adequacy of the fitness-for-duty certification, relieved Defendants of their obligation to reinstate Dykstra). Accordingly, Defendants' motion is denied as to the FMLA claims.

### B. ADA and FCRA Claims

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam). Under the ADA, a "disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Defendants contend that Dykstra's complaint contains no allegations to support that her back injury was a "disability" within the meaning of the ADA. In particular, Defendants point to the absence of an allegation of how Dykstra's back injury "substantially limits one or more of her life activities." (DE 12 at 10.) Dykstra protests that she alleges she had a back injury and that this injury temporarily prevented her from working, which is a major life activity. 42 U.S.C. § 12102(2).

Defendants' argument fails because Dykstra's allegations demonstrate that her back injury required her to take a significant amount of time off work, which is sufficient under the standards imposed by the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101, *et seq*. and its regulations. The ADAAA regulations provide that the term "substantially limits" "shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). The regulations further provide that an impairment is a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population" and that such " impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii). Also, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* § 1630.2(j)(1)(vii). And courts have held in post-ADAAA cases that temporary injuries may qualify as disabilities. *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 333 (4th Cir. 2014); *Hodges v. D.C.*, 959 F. Supp. 2d 148, 154 (D.D.C. 2013); *see also* 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.").[8]

Under these standards, a back injury that temporarily prevents an employee from working may qualify as a disability. The Court rejects Defendants' argument to the contrary as it is based on standards predating the ADAAA and its regulations. *See* 29 C.F.R. § 1630.2(j)(1)(iv) ("[T]he term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA."). Furthermore,

---

[8] Defendants have not challenged the validity of the ADAAA regulations and the Court declines to do so *sua sponte*.

there is no requirement that a complaint contain the "magic words" that the impairment "substantially limits one or more of her life activities." It is sufficient that the alleged facts demonstrate that Dykstra's back injury meets this standard. Accordingly, the Court denies Defendants' motion to dismiss as to Dykstra's ADA claim. Also, because Defendants argue that Dykstra's FCRA claim is subject to dismissal "for the same reasons [they argue] that Plaintiff's claim under the ADA fails," (DE 12 at 11), the Court denies Defendants' motion as to the FCRA claim as well.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss for Failure to State a Claim (DE 12) is **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of April, 2016.

_____
KENNETH A. MARRA
United States District Judge